IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** on behalf of and for the use of | : No. 1:08-CV-01728 |
| | : **JUDGE SYLVIA H. RAMBO** |
| **SIMPLEXGRINNELL, LP,** | : |
| Plaintiffs | : |
| v. | : |
| **AEGIS INSURANCE COMPANY, and COLEMAN CONSTRUCTION COMPANY, INC.,** | : |
| Defendant | : |

# **M E M O R A N D U M**

Before the court is Defendant Aegis Security Company's ("Aegis") motion to dismiss Plaintiff SimplexGrinnel, LP's ("SG") bad faith claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.  The case arises out of the alleged failure of Aegis to pay SG pursuant to its obligation under a payment bond given by Aegis as surety for its principal, Defendant Coleman Construction Company, Inc. ("Coleman"). Aegis argues that the court must dismiss the claim because a surety bond does not constitute an insurance policy under 42 Pa. Cons. Stat. Ann. § 8371.  The court considers this argument below.

**I.      Background: Facts[1] and Procedural History**

Coleman entered into a contract with the United States Navy on or about September 30, 2006, for the renovation of a fire alarm system at the NAVFAC Navy Depot located in Mechanicsburg, Pennsylvania.  (Doc. 13 ¶ 7.)  On February

---

[1] The court accepts the facts as alleged in Plaintiff's amended complaint (Doc. 13) as true for purposes of the instant motion.

2, 2007, Coleman subcontracted with SG to provide labor and materials in connection with the renovation of the fire alarm system at the Navy Depot. (*Id.* ¶ 8.) Although SG completed all work specified under the contract, Coleman "currently has open balances on four invoices with SG, issued between May 14, 2007 and September 27, 2007." (*Id.* ¶¶ 9–10.) On January 16, 2008, Coleman admitted to owing the balance due on its account with SG. (*Id.* ¶ 11.) Nonetheless, Coleman allegedly has failed to respond to demands for payments, failed to respond to SG's first complaint, and failed to appear at an arbitration as required by the contract. (*Id.* ¶¶ 12–23.)

The Miller Act, 40 U.S.C. § 3131, required that Coleman furnish bonds prior to receiving the contract, and Aegis, the surety, issued Bond No. B10 007 706 ("the Bond") to Coleman, the principal. (*Id.* ¶ 16.) After Coleman failed to compensate SG for labor performed, SG made a demand on Aegis by letter dated June 3, 2008. (*Id.* ¶¶ 17, 21.) On September 18, 2008, SG brought suit against Coleman and Aegis. (*Id.* ¶ 22.) SG made subsequent demands on Aegis, but Aegis has not tendered payment on the Bond. (*Id.* ¶ 24.) On November 10, 2008, SG filed an amended complaint, adding a bad faith claim under 42 Pa. Cons. Stat. Ann. § 8371. (Doc. 13.)

On November 21, 2008, Aegis filed a motion to dismiss SG's bad faith claim along with a supporting brief, arguing that a surety bond does not constitute an insurance policy under the statute. (Docs. 15–16.) SG filed a brief in opposition to the partial motion to dismiss on December 15, 2008. (Doc. 25.) Aegis opted not to file a reply brief. The motion to dismiss SG's bad faith claim is now ripe. The court will turn to the merits of the motion.

## II.        **Legal Standard**

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair notice" in Rule 8(a)(2) "depends on the type of case—some complaints will require at least some factual allegations to make out a showing that the pleader is entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation omitted). "A situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Id.* A plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief. *Twombly*, 127 S. Ct. at 1965; *see also Phillips*, 515 F.3d at 238–39; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (The court is not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." (quotations and citations omitted)); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). If the

facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  *Twombly*, 127 S. Ct. at 1965, 1974; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Caroll*, 495 F.3d 62, 66 (3d Cir. 2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action.  *Twombly*, 127 S. Ct. at 1965.

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]."  *Id.*  Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading may be considered."  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.      Discussion**

Aegis seeks dismissal of SG's bad faith claim pursuant to Rule 12 of the Federal Rules of Civil Procedure, arguing that SG failed to state a claim for bad faith because a surety bond does not constitute an insurance policy under 42 Pa. Cons. Stat. Ann. § 8371.  Pennsylvania's Bad Faith Statute provides that:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371.  No binding authority exists in the Middle District of Pennsylvania on the issue of whether a surety bond constitutes an insurance policy under the statute, and neither the Pennsylvania Supreme Court, the Pennsylvania Superior Court, nor the Court of Appeals for the Third Circuit has ruled on the issue. *But see Intercon Constr., Inc. v. Williamsport Mun. Water Auth.*, No. 4:07-CV-1360, 2008 WL 239554, at *3 (M.D. Pa. Jan. 28, 2008) (holding, in an unpublished opinion, that § 8371 does not apply to surety bonds).  While no binding authority exists, the issue is not "uncharted," *McKenna v. Pacific Rail Service*, 32 F.3d 820, 825 (3d Cir. 1994), and an identifiable trend exists toward finding that a surety bond does not constitute an insurance policy.  *See Intercon Constr.*, 2008 WL 239554, at *2 (collecting cases).

While the statute does not define an action "arising under an insurance policy," "the usual view, grounded in commercial practice, [is] that suretyship is not insurance." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 140 n.19 (1962) (citing Edward H. Cushman, *Surety Bonds on Public and Private Construction Projects*, 46 A.B.A.J. 649, 652–653 (1960)).  This "usual view" has been recognized by

Pennsylvania courts, which have noted "fundamental differences" between contracts of insurance and surety agreements. *Grode v. Mutual Fire, Marine and Inland Ins. Co.*, 572 A.2d 798, 806 (Pa. Commw. Ct. 1990) *aff'd in relevant part, sub nom.*, *Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 614 A.2d 1992 (Pa. 1992); *see also Carr & Duff, Inc. v. Se. Pa. Transp. Auth.*, No. 4101, 2002 WL 746385, at *4 (Pa. Commw. Ct. April 12, 2002); *Collier Dev. Co., Inc. v. Jeffco Constr. Co.*, No. GD 93-17798, 1995 WL 847602, at *4–5 (Pa. Commw. Ct. April 13, 1995).

Legal treatises also support this view. *See, e.g.*, 44 C.J.S. *Insurance* § 2 (1993) ("While insurance contracts are in many respects similar to surety contracts, there is a very wide difference between them."). As one treatise explains:

> The role of the surety is different from that of an insurer because:
>
> 1. The surety bond is a financial credit product, not an insurance (indemnity) product;
>
> 2. The surety has a "contractual" relationship with two parties that often have conflicting interests, causing the surety to balance these interests when responding to claims;
>
> 3. The surety bond form customarily is written or furnished by the obligee rather than the surety.
>
> 4. The surety customarily is requested to assure performance of construction contracts that are sufficiently large to warrant bonding and typically are entered into by parties with commercial sophistication, relative parity of bargaining power and access to ample legal and technical advice;
>
> 5. The bond premium usually is paid by the contractor to the surety out of the contract price, rather than directly by the obligee to the surety, although it is not uncommon for obligees to reimburse contractors for the premium; and
>
> 6. The pricing of the premium by the surety is not based upon risk of fortuitous loss, but assumes reimbursement to the surety from the principal and indemnitors for any loss.

Philip L. Bruner & Patrick J. O'Connor, Jr., 4 Bruner & O'Connor on Construction Law § 12:7 (2003) (quotation reformatted and citations omitted).

These distinctions are of more than mere academic concern. As one court explained:

> . . . Central to this difference is consideration of the relationships among the parties to the different contracts. An insurer and its insured share a direct contractual relationship and the understanding of that relationship is that the insurer will compensate the insured for loss or damage upon proper proof of claim and without resort to litigation. Special damages for bad faith conduct within that relationship are consistent with such a direct relationship. But a surety . . . and a protected party . . . share no such direct relationship . . . .

*Superior Precast, Inc. v. Safeco Ins. Co. of Am.*, 71 F. Supp. 2d 438, 451–52 (E.D. Pa. 1999). As the court went on to note, failing to recognize this critical distinction would contradict the principle in Pennsylvania that "the liability of a surety is not greater than that of a principal" by creating a situation where "a cause of action or remedy that would not be available as against a principal" would be available against a surety. *Id.* at 452.

Recognition of these critical distinctions between insurance and suretyship has led district courts to hold that an individual may not bring a claim for bad faith pursuant to 42 Pa. Cons. Stat. Ann. § 8371 against a surety. *See, e.g.*, *Intercon Constr.*, 2008 WL 239554, at *3 ("Due to the numerous differences between insurance policies and surety bonds . . . we conclude that had the Pennsylvania legislature intended § 8371 to apply to a surety bond, it would have done so explicitly."); *Superior Precast*, 71 F. Supp. 2d at 454 ("Therefore the ordinary meaning of insurance policy, recognizing the 'wide difference' between insurance and suretyship, controls the constructions of § 8371."); *Allegheny Valley Joint Sewage Auth. v. Am. Ins. Co.*, No. CIV.A. 94-2105, 1995 WL 1944748, at *4 (W.D. Pa. Aug. 17, 1995) ("[T]he express terminology of § 8371 limits its scope to actions arising under insurance policies. Again, if the legislature intended to

provide obligees a private cause of action for bad faith against issuers of surety or performance bonds, it would have done so expressly.").

Nonetheless, Plaintiffs attempt to suggest that a significant dispute exists on this issue by pointing to two district court cases from the Eastern District of Pennsylvania that provide implicit support to their position: *Reading Tube Corp. v. Employer's Ins. of Wasau*, 944 F. Supp. 398 (E.D. Pa. 1996) and *Turner Constr. Co. v. First Indemnity of Am. Ins. Co.*, 829 F. Supp. 752 (E.D. Pa. 1993). The court has reviewed these cases and finds that neither case substantially supports the argument that an individual may bring a bad faith claim against a surety under § 8371. As previous courts have explained, *see, e.g.*, *Superior Precast*, 71 F. Supp. 2d at 449, the court in *Reading Tube* and the court in *Turner Construction* seem to have merely accepted that § 8371 applies to suretyship without further analysis. *See Intercon Constr.*, 2008 WL 239554, at *3; *Superior Precast*, 71 F. Supp. 2d at 449. Accordingly, this court will decline SG's suggestion that the court follow these opinions.

Instead, this court will follow the sound and thorough reasoning of the district courts that have conducted a comprehensive analysis of the issue and concluded that an individual may not bring a claim against a surety for bad faith under § 8371. These courts have given due consideration to the intent of the Pennsylvania legislature, and, for the reasons described above, have determined that the differences between insurance policies and surety bonds encourage not judicially

expanding the bad faith statute to encompass surety bonds.[2]  Therefore, the court will dismiss SG's bad faith claim against Aegis.

**IV.** **Conclusion**

For the foregoing reasons, the court will grant Aegis's motion to dismiss SG's bad faith claim under 42 Pa. Cons. Stat. Ann. § 8371 for failing to state a claim upon which relief can be granted.  An appropriate order follows.

s/Sylvia H. Rambo<br>SYLVIA H. RAMBO<br>United States District Judge

Dated:  January 14, 2009.

---

[2] SG urges the court to reach a different result because "*Superior Precast* (and all the cases it cites) are all distinguishable because none of them dealt specifically with the long-standing, important, federal scheme created by the Miller Act." (Doc. 25 at 11.)  In particular, SG argues that the surety bond at issue in *Superior Precast* was required by a Commonwealth of Pennsylvania statute not a federal statute.  The court fails to perceive why this distinction matters.  At issue in this matter is whether the Pennsylvania bad faith statute applies to surety bonds.  The reason for requiring the bond does not affect the court's analysis.  Nothing in 42 Pa. Cons. Stat. Ann. § 8371 suggests that surety bonds required by federal statute constitute "insurance policies," but surety bonds required by state statute do not constitute "insurance policies."  Indeed, the court finds it peculiar to argue that the same financial credit product may constitute an insurance policy in some contexts but not in others simply based on the reasons for acquiring the financial credit product.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** on behalf of and for the use of | : No. 1:08-CV-01728 :<br>: **JUDGE SYLVIA H. RAMBO** |
| **SIMPLEXGRINNELL, LP,** | : |
| **Plaintiffs**<br>v. | : |
| **AEGIS INSURANCE COMPANY,** and **COLEMAN CONSTRUCTION COMPANY, INC.,** | : |
| **Defendant** | : |

# **O R D E R**

In accordance with the foregoing discussion, **IT IS HEREBY ORDERED THAT** Defendant Aegis's Motion to Dismiss Count II of Amended Complaint (Doc. 15) is **GRANTED**.

> s/Sylvia H. Rambo
> SYLVIA H. RAMBO
> United States District Judge

Dated: January 14, 2009.